# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

Z.J. a minor, by and through )
her next friend Je'tuan Jones, )
                                    Plaintiff, )
                                         )
v. ) Case No.: 4:15-cv-00621-FJG
                                         )
KANSAS CITY, MISSOURI )
BOARD OF POLICE )
COMMISSIONERS, et. al. )
                                         )
                                  Defendants. )

**ORDER**

Currently pending before the court is Defendants' Motion to Dismiss (Doc. No. 35).

## I. Background

Plaintiff Z. J. a minor child, by and through her next friend Je'taun Jones, brought suit against Kansas City, Missouri Board of Police Commissioners members Alvin Brooks, Michael Rader, Angela Wasson-Hunt, Sylvester James, Leland Shurin and officers Jason Rusley, Michael Jones, Barbara Eckert, Caleb Lenz, William Nauyok, Eric Enderlin, Charles Evans, Robert Jorgeonsen, Venasa Ray, and Robert McLaughlin asserting a claim for excessive force in violation of the Fourth and Fourteenth Amendments and a claim for deliberately indifferent policies, practices, customs, training, and supervision in violation of the Fourth and Fourteenth Amendments.

On November 3, 2010, Detective Mike Jones applied for a search warrant for 11812 Bristol Avenue, Kansas City, Missouri for Lee Charles. It was thought that Lee Charles lived at that address but he had not resided at that address for four months. On

November 3, 2010, at 3:00 p.m. the search warrant was issued. At 3:35 p.m. on that same day, Lee Charles was arrested by the Kansas City Police Department by officer Lantz. Defendant Eckert was contacted to sign the Investigation Arrest Approval Form for Lee Charles.

At about 7:00 p.m., the search warrant was executed by the KCMO SWAT team including Defendant Eckert. This was almost three and a half hours after Lee Charles was arrested. At the time the SWAT team executed the search warrant, Je'taun and Lemondray Jones (owners of the home) were at work. Plaintiff Z. J. was home and in the care of her adult cousin, Carla Brown (hereinafter "Brown"). Two other adults were in the home as well, Z.J's grandmother, Laverne Charles (hereinafter "Charles") who was upstairs in a hospital bed, and Leona Smith (hereinafter Smith), who was caring for Charles upstairs.

When the SWAT team arrived at the home, they made contact with Brown who had looked out the window to see officers already attempting to open the outer door. The house had two doors, an outer door and inner door. Brown shook the keys at officers to signify that they did not need to break the door. At this time, the grandmother and her caregiver were upstairs. Z.J. who was two at the time was playing alone in the basement. Instead of waiting for Brown to open the door, the officers entered with weapons drawn, and immediately threw a "flash bang grenade" into the living room area of the residence igniting the drapes on fire. Officers placed Brown and Smith in handcuffs, but their attempt to put hand cuffs on Charles failed because of her physical limitations. Officers were told that Lee Charles did not live at the home and had not

done so for four months, so they left. The Jones' residence suffered damage and Z. J. allegedly suffered physical and emotional damages as a result of the search.

## II. Standard

When deciding how the court should rule on a motion to dismiss, the court must accept the factual allegations being made by the plaintiff as true and construe them in the light most favorable to the plaintiff. Patterson Oil Co. v. VeriFone, Inc., No. 2:15-CV-4089, 2015 WL 6149594, *3 (W.D. Mo. Oct. 19, 2015) (citing Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008)).

Fed. R. Civ. P. 12(b)(6) provides that a claim can be dismissed upon the grounds of "failure to state a claim upon which relief can be granted." To avoid dismissal under Rule 12(b)(6) a complaint must be pleaded properly. Fed. R. Civ. P. 8(a)(2) sates that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct.1955, 167 L.Ed.2d 929 (2007)). In order for a claim to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. "" Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009). A motion to dismiss under 12(b)(6) is generally disfavored by the courts. In re Eugene L. Pieper, P.C., 202 B.R. 294, 297 (Bankr. D. Neb. 1996). The court can treat a 12(b)(6) motion as a 12(c) motion for the judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The distinction is purely formal, because a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." Ixtepan v. Beelman Truck Co., No. 14-00142, 2015 WL 1061560, *3 (E.D. Mo. Mar. 11, 2015) (citing Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009); see also NanoMech, Inc. v. Suresh, No. 13-3671, 777 F.3d 1020, 1023 (8th Cir. Feb. 6, 2015)).

### III. Discussion

Defendants filed a motion to dismiss plaintiff's lawsuit alleging that the complaint failed to state a claim against the officers because alleging only that the police officers used a "flash bang" device does not show that plaintiff's right to be free from excessive force was violated. The officers were executing a search warrant for evidence of a stabbing and strangulation. Defendants also allege that the claim against the Board fails to state a claim because it only alleges that the Board allows officers to use "flash bang" devices in non-emergency situations and does not state a "policy or custom" because there are no facts pled that it happened more than once.

Plaintiff Z.J. argues that defendants' motion is untimely under Fed. R. Civ. P. 12(b)(6) because a motion to dismiss cannot be filed after the answer has been submitted. She alleges that defendants submitted an answer to the Plaintiff's First Amended Complaint on February 23, 2016. (Doc. No. 25). Plaintiff alleges that on March 9, 2016, defendants submitted their motion to dismiss. (Doc. No. 35). Plaintiff alleges that since the answer to the complaint was submitted, the present motion is inappropriate. Plaintiff also alleges that defendants' motion states facts outside of the pleading that should not be considered or the motion should be converted to one for

4

summary judgment. Plaintiff argues that the First Amended Complaint states a claim sufficient to comply with Iqbal and Twombly.

The court will rule on this motion to dismiss construing the facts in the light most favorable to the plaintiff. The court must first determine if the timing of the Rule 12(b)(6) motion to dismiss is proper.

A motion asserting a Fed. R. Civ. P. 12(b)(6) defense "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). "[A] Rule 12(b)(6) motion cannot be filed after an answer has been submitted." Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). "Rule 12(h)(2) provides that "[a] defense of failure to state a claim upon which relief can be granted" may be advanced in a motion for judgment on the pleadings under Rule 12(c)…." Id. at 1488. (quoting St. Paul Ramsey County Med. Ctr. v. Pennington County, 857 F.2d 1185, 1187 (8th Cir. 1988)). "[A]n amended complaint supersedes an original complaint…." Bernard v. United States DOI, 674 F.3d 904, 909 (8th Cir. 2012) (citing In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005)).

In this case, Defendants claim that they did not file an answer to the amended complaint after Plaintiff filed her First Amended Complaint. However, Defendants fail to disclose that the response they provided was titled "Answer and Affirmative Defenses of Defendants to Plaintiff's First Amended Complaint" on February 23, 2016. (Doc. No. 25). While the plaintiff did not submit their "First Amended Complaint" to the court until February 24, 2016 (Doc. No. 27), a motion to amend the complaint was submitted to the court on January 29, 2016. (Doc. No. 21). The motion to amend had a copy of the full amended complaint attached to it. On February 23, 2016 the court granted plaintiff's

5

motion for leave to file the "First Amended Complaint." (Doc. No. 26). The response the Defendants submitted was to the amended complaint although the Defendants submitted their response one day before plaintiff officially filed that same complaint with the court. Therefore, the response that was submitted by defendants' was to plaintiff's First Amended Complaint and will be viewed as such by the court.

Since an answer to the amended complaint was submitted, the court will look at whether the court should convert Defendants' 12(b)(6) motion into a Rule 12(c) motion for judgment on the pleadings. The court finds that conversion of defendants' motion into a 12(c) motion is proper although the pleading stage has passed, as it is still early enough in the judicial process that the court's action would not delay a trial.

Next, the court addresses whether it may consider matters outside the pleadings when ruling on this motion. "Although Rule 12(b) generally prohibits consideration of matters outside of the pleadings on a motion to dismiss, the court may consider certain matters outside of the pleadings without converting the motion into a motion for summary judgment." Int'l Motor Contest Ass'n v. Staley, 434 F. Supp. 2d 650, 657-658 (N.D. Iowa 2006). "For example, the court may consider documents outside of the pleadings where 'the plaintiffs' claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the documents.'" Id. at 657-658 (citing Jenisio v. Ozark Airlines, Inc., Retirement Plan, 187 F.3d 970, 972 n.3 (8th Cir. 1999) (citing Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997))). A motion is not automatically converted to a summary judgment motion "simply because one party submits additional matters in support of or opposition to the motion," because "some materials that are part of the public record or do not

6

contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss." Int'l Motor Contest Ass'n, 434 F. Supp. 2d at 658 (quoting Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)). "[E]ven where matters outside of the pleadings are presented to the court, a motion to dismiss is not converted into a motion for summary judgment where the district court's order makes clear that the judge ruled only on the motion to dismiss." O'Neill v. Jesco Imps., Inc., No. 06-3017, 2006 WL 2623220 (W.D. Mo. Sept. 12, 2006) (quoting Inter. Motor Contest Ass'n. Inc., 434 F.Supp.2d 650).

Since the court has chosen to convert defendants' 12(b)(6) motion into a 12(c) motion and analyze it as such, the court will still view the facts in the light most favorable to the plaintiff. Plaintiff argues that factual challenges are not permitted in a motion to dismiss for failure to state a claim and the trial court may only consider the complaint and exhibits attached to the complaint. That argument is not accurate because materials that are part of the public record or do not contradict the complaint can be considered in ruling on this motion. The search warrant can be considered by the court because it is a public record and does not contradict the complaint. Paragraphs ¶¶ 19, 21-22 of the Complaint do not contradict the warrant. The Complaint even states the "warrant allowed search and seizure of property, specifically cell phones and cell phone chargers as described by the victim's family, clothing, shoes, or knives with trace evidence, items that could be used for strangulation with trace evidence, and a set of keys as described by victim's family." Paragraph ¶ 22 (Doc. No. 27). All of this information is in agreement with the actual search warrant application attached by the

7

Case 4:15-cv-00621-FJG   Document 92   Filed 08/02/16   Page 7 of 13

defendants' in the property to be seized section of the search warrant application. Therefore, the court can and will consider the search warrant.

Plaintiff alleges that the defendants' motion contains a statement of facts that contradicts the statement of facts contained in the plaintiff's First Amended Complaint however, that statement is not supported. Even though the Court may consider information outside of the pleading, the district court can make it clear that it is only ruling on the motion to dismiss. The court declines to convert defendants' Motion to Dismiss into a Motion for Summary Judgment and is simply analyzing the case as a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings.

Next, the court must consider whether to grant the motion for judgment on the pleadings based on whether the facts alleged in the complaint and the search warrant are enough to satisfy the Iqbal and Twombly pleading standard. In order for the Excessive Force claim to be successful plaintiff must plead a successful 42 U.S.C. § 1983 claim. 42 U.S.C. § 1983 provides that:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . .

All claims of excessive force filed under 42 U.S.C. § 1983 claiming that officers used excessive force are analyzed under the "objective reasonableness" test. Graham v. Connor, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867, 104 L. Ed. 2d 443, 450 (1989). In order for force to be considered excessive, reasonableness depends on:

8

> [A] careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. … Because the test of reasonableness under the Fourth Amendment is not capable of precise definition …its proper application requires careful attention to the *facts and circumstances of each particular case*, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight (emphasis added).

Graham, 490 U.S. at 388. How best to conduct a search is generally left to officers; while the use of flash grenades may not be "unreasonably destructive" "even valid warrants must be executed in reasonable manner." Cook v. Gibbons, 308 Fed. Appx. 24, 30 (8th Cir. 2009) (citing Hummel-Jones v. Strope, 25 F.3d 647, 650, 653 (8th Cir. 1994)). "The use of a "flash-bang" device in a house where innocent and unsuspecting children sleep gives the appellate court great pause. …an appellate court could not countenance the use of such a device as a routine matter…. it must review the agents' actions from the perspective of reasonable agents on the scene who are legitimately concerned with not only doing their job but with their own safety." United States v. Myers, 106 F.3d 936, 938 (10th Cir.), cert. denied, 520 U.S. 1270 (1997). In Cook, it was considered reasonable for the officers to use flash grenades which broke two windows and knocked down a door because the defendant was believed to be armed and dangerous. Cook, 308 Fed. Appx. at 30.

Defendants' argue that officers had a right to use the "flash bang" device because the officers had probable cause to believe that someone on the premises had knives or items that were used in the strangulation of the victim. (Doc. No. 27). First Amended Complaint, Paragraph ¶ 22. Defendants' argue that under those circumstances, the use of the device was necessary to minimize the chance that the

9

weapons would be used against the officers. Plaintiff argues that in each case cited by the defendants, the suspect was in the residence being searched or was believed to be present based on the information available to the officers at the time the raid was conducted. Plaintiff argues that the Cook case is distinguishable from this case because that case involved a high risk entry. Officers reasonably believed they were in danger. Plaintiff argues that the search was excessive because officers made no distinction between the criminal and innocent bystanders.

    The court is persuaded by the plaintiff's argument. In this case, officers were carrying out a search warrant for a suspect that had been arrested almost four hours earlier by the same Kansas City Police Department that carried out the raid. In fact, officer Eckert (one of the named defendants) was contacted to sign the Investigation Arrest Approval Form for the defendant and participated in the raid later on that same day. At about 3:30 p.m. officer Eckert signed the arrest approval for suspect Lee Charles. At about 7:00 p.m. officer Eckert participated in the raid of the residence that was believed to be that of Lee Charles. While probable cause was present for the search warrant and search, the officers should have known that Lee Charles was already in custody. Searches have to be carried out in a reasonable manner. In this case, the use of the "flash bang" device may be seen as unreasonable by a reasonable officer who knew that the suspect was already in custody and could therefore be considered excessive. Furthermore, after the officers were told that Lee Charles had not lived at the residence for four months, they simply left.

    The fact that Lee Charles was already in custody gives the court cause for concern. There was a minor child, a babysitter, a sick elderly woman, and a caregiver in

10

the home. The babysitter and caregiver were handcuffed. The only reason the elderly woman was not handcuffed was because of physical limitations.  The officers should not have had cause for concern that the suspect was present because he was already in their custody. While the court does not dispute the seriousness of the crime that was committed, the force used may not have been reasonable based on the factual circumstances. The officers were looking for cell phones, phone chargers, shoes, clothing, knives with trace evidence, cords, wire or rope with trace evidence, and a particular set of keys. The officers' safety was not in any immediate danger because the suspect was in jail.

  Next, defendants' argue that that plaintiff's second claim (deliberately indifferent policies, practices, customs, training, and supervision in violation of the Fourth and Fourteenth Amendments) against the Board of Police Commissioners does not state a policy or custom because there are no facts plead that it happened more than once. Plaintiff and defendants address the Monell claim. There is a difference between a Monell claim based on custom versus one based on policies. "[L]ocal governments, by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 660 (U.S. 1978). "[S]uch practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. at 691. "Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially

11

adopted and promulgated by that body's officers." Id. at 660. Liability for an unconstitutional custom or policy cannot arise from a single instance. McGautha v. Jackson County, 36 F.3d 53, 57 (8th Cir. 1994), cert. denied, 515 U.S.1133 (1995) (citing Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991)). Defendants' cite a plethora of cases to support that isolated incidents are not enough to prove that there was an official policy or custom, however, the defendants do contend that "there is no clear consensus as to how frequently such conduct must occur to impose Monell liability, 'except that it must be more than one instance.'" Thomas v. Cook Cty. Sheriff's Dep't, 604 F.3d 293, 303 (7th Cir.), cert.denied, 562 U.S. 1061 (2010) (citing Cosby v. Ward, 843 F.2d 967, 983 (7th Cir. 1988)). In Renno v. Bronner, No. 10-0587, 2010 WL 4386531 (W.D. Mo. Oct. 29, 2010), the Court found that alleging that a custom or policy was a moving force behind plaintiff's allegations was sufficient to withstand defendants' motion to dismiss with respect to plaintiff's §1983 claim. Id. at *1.

> The Supreme Court invalidated heightened pleading requirements in section 1983 suits against municipalities in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993). "When a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right. Moreover, such a holding would disregard the liberality of Fed. R. Civ. P. 8(a)(2) which requires merely 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 8(f), which states 'pleadings shall be so construed as to do substantial justice.' . . . At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom." Doe ex rel. Doe v. School Dist. of City of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003).

Parsons v. McCann, 138 F.Supp. 3d 1086, 1099 (D. Neb. 2015).

Plaintiff's First Amended Complaint pleads that official policies of the Board such as letting officers use "flash bangs" in non-emergency situations or within their discretion is a violation of the 42 U.S.C. § 1983 because it led to a use of excessive force. Plaintiff argues that the policies by the Board are lacking when it comes to protecting innocent people such as children and elderly in situations where search warrants are carried out at residential homes to collect property. Plaintiff argues that while more than one instance is needed to prove a custom or policy, the standard of proof is applicable at trial, not at the pleading stage. The plaintiff is correct. At the pleading stage, the plaintiff may not have all the necessary information to plead multiple instances of violations or the exact policy in place. The plaintiff provided facts which could support a §1983 claim. The court is persuaded that the plaintiff has met her burden at the pleading stage giving defendants notice of a Monell claim. To meet the Iqbal and Twombly standard, the plaintiff can merely allege that there was a custom or policy violated and plead enough to prove that the custom or policy was the driving force behind that violation. The plaintiff can plead facts that could support the violation which is enough to survive a motion to dismiss. While plaintiff stated nothing more than a single instance the plaintiff met the minimum burden of alleging facts which could support the existence of an unconstitutional policy or custom.

## IV. Conclusion

Accordingly, for the reasons stated above, the Defendants' Motion to Dismiss (Doc. No. 35) is hereby **DENIED**.

Date: August 2, 2016　　　　　　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

13

Case 4:15-cv-00621-FJG   Document 92   Filed 08/02/16   Page 13 of 13